May it please the Court, my name is Michael Harker. I am a counsel for the appellate, Shannon King, and I would note her presence also here today. I'd request, if I could reserve two minutes for rebuttal. You may, but watch the clock. Okay. Counsel, you're in charge of your own time. Understood. Thank you very much. As this Court is, I'm sure, certainly aware, this case stems from a summary judgment granted by the Honorable James T. Mahan in Nevada disposing of my client's entire case, surrounding real property and ultimately a foreclosure which occurred on this real property in Clark County, Nevada. The Court determined that all six causes of action stemming from this foreclosure did not, or should not proceed to trial and granted summary judgment, finding there were no genuine issues of material fact. Obviously, it is the position of my client that we disagree with this assessment. Specifically, as set forth in the brief, due to the unfortunate downturn of the economy, of course, my client had fallen behind on her mortgage payments on property in Clark County. We do acknowledge this was not her principal place of residence. She did live in California. All right, but getting to the heart of the matter here, there was no breach by the lender in this case. It was your client who failed to pay the mortgage payment on time. And at most, you have an oral understanding about an extension which was never reduced to writing, and so you've got a statute of frauds problem. Understood, Your Honor. What did happen? So what's left in the case? Well, what's left, Your Honor, is this. I would disagree that there's a statute of frauds problem. I mean, I understand there's a statute of frauds that exists in Nevada law. However, when the bank agreed to accept the payment, specifically, first and foremost, as pursuant to the brief, and my client's affidavit, she paid, after having paid substantial sums in May and June of 2008, she was told to make a $1,000 payment and then make three payments of $1,908 in July, August, and September of 2008. She made those payments. So it is our position, Your Honor, that although ---- Did she make those payments on time, or were some of those payments late as well? Well, admittedly, the July payment was made early, the August payment was made on the 5th, and the September payment was made on the 14th. So even accepting an oral modification, assuming that that is valid and permissible, the September payment did not meet the terms of the alleged new agreement either. Well, Your Honor, unfortunately, as the justices noted, this was not reduced to writing. So one could argue that although they were due at the beginning of the month, she had until the 15th, as a typical loan is, due on the 1st, late on the 15th. Notwithstanding, even though she did send it late, it was accepted. It was returned the same day they foreclosed on the property, which was September 18th. So it wasn't accepted. It was returned. Well, it was returned. She had submitted it, and then it was returned. Without any notice to her, without any ---- She acknowledges she was a couple of weeks or about 10 days late, but she did eventually make that payment. The bank never said, sorry, we're not going to take this payment. We're going to go ahead and foreclose on you. And I would note, Your Honor, that the foreclosure, of course, the notice of trustee sale, was set for July of 2008. And, of course, the foreclosure did not actually even occur until September of 2008. So in your view, would it have been perfectly fine for the foreclosure to have happened in July, and it's only because it happened three months later that it was impermissible? Is that your argument? Well, my argument is, yeah, they set the notice of trustee sale, but once she made the payments, they obviously agreed to not foreclose on her. So that's why they didn't. If they wouldn't have accepted those payments, they would have never foreclosed on her in July. But the fact is, is they took the $1,000 payment, then they took the 1908, and they didn't sell. Obviously, so to answer your question, yes, I think if they would have sold in July without having accepted any payments, it would have been permissible if all notice requirements had been made. But because they continued the sale ---- In terms of the July notice, you're not alleging any defect in that notice in terms of its form or delivery or anything like that, as I understand it? Right. Your Honor, that is accurate. My client's had issues regarding whether she actually received it or not, but the bank did provide proof that they had recorded the notice of default and the notice of trustee sale. And I haven't focused on that because they did continue that sale anyway. So, no, we haven't made a big issue about that because they agreed to the loan modification, and then therefore did not sell the property in July of 2008. Now, there was no new notice for the September 2008 sale. They just went ahead and sold that, probably orally continuing it, which is allowed under Nevada law. But when a reasonable individual is making payments, thinking that she's going to ultimately get a permanent loan modification, and then all of a sudden finds out, not even told from the bank, all of a sudden she gets a notice on her door saying you need to leave. She was surprised to receive the notice, I gather. But did she do anything in reliance, did she change her position in any way with regard to, in reliance on the fact that she was going to be able to continue to live in the house? Well, she made, number one, she made the payments. So, you know, obviously if she knew they were going to foreclose on her, she would have saved about the $12,500 over time that she had put into trying to save this property. If she thought they were going to sell you in July, why would she have made any payments? So clearly she relied on the representations of the bank. Well, it would be the payments after July, which would be what? It would be, if you go by the oral modification, she had made payments before. If you go by the oral modification, it's the $1,000 I get, good faith, plus the three payments of 1908. So that would be the four payments, which is typical. I'm sure your honors are aware what they'll do is they'll do a three-month trial period payment. If you make those three-month payments, then they'll send you the paperwork for the permanent loan modification. Obviously she never did receive that permanent loan modification. They ended up foreclosing on her. But once again, she made the payments in reliance on representations of the bank, and that's why I believe the wrongful foreclosure, the estoppel, the misrepresentation, the breach of contract, and even unjust enrichment. Certainly there are genuine issues of material fact here, which should allow this case to proceed to trial. This is a summary judgment which was granted. And she did rely. I mean, we had set forth she could have taken other actions, such as file a bankruptcy or what have you, but the bottom line is that she made the payments in good faith, with the bank telling her that they wouldn't foreclose. Indeed, they didn't in July. And then in September, because possibly for whatever reason the bank is saying, well, your payment came in late, the fact of the matter is they foreclosed on September 18th without a new written notice, without even telling my client, without so surprise and shock would probably be the best words. So, Your Honor, once again, Your Honors, we clearly believe that the summary judgment was inappropriate. And I see my time is up for the eight minutes. I'll go ahead and reserve my two minutes. Thank you very much. Let me do so, counsel. We'll hear from GMAC Mortgage. Good morning. May it please the Court. Colt Dodrill for GMAC Mortgage. This Court should affirm the district court's granting of summary judgment in favor of GMAC Mortgage because Mrs. King simply can't present any claim against GMAC Mortgage. As this Court noted, there's many issues with her contractual claim. In addition to the statute of frauds, there's simply no consideration to support the loan modification. Counsel, the notice of the trustee's sale went out in July. It went out with a sale date of July 17th. And the record does not show a new notice being sent before the, or at least I didn't see it, before the similar document for the September 18th. That's correct. There was no new notice sent. Under Nevada law 107.082, a trustee's sale can be orally continued up to three times before a new notice is required under Nevada's foreclosure statutes. That's so, but the record, as I saw it, also didn't definitively say how many oral postponements there had been. That's correct. The plaintiff only alleges the one continuance. She's master of her complaint. She has the burden of proof. So you just assume that she said one and one is fine with you. And looking at the time, the original trustee's sale had, or notice of trustee's sale, had a sale date of July 17th. Correct. The sale ended up going forward in September. So she made a July payment. The sale didn't go forward in July. There was, she made an August payment. The sale did not go forward in August. Her September payment was late. And so the sale went forward in September. So even looking at a calendar, there could have been a maximum of two continuances, one from July to August and one from August to September. But as the record only indicates, the continuance from July 17th to the September date. September 18th, yeah. How many days late was the September payment? It was approximately 14 days late. I think we got it on the GMAC mortgage received around the 17th. And foreclosure occurred how many days after the payment was received? Actually, I think the foreclosure happened before GMAC had received or processed the payment. Her payment was due on the 5th. The notice, the sale was September 18th, which was 13 days, approximately two weeks after the payment was due. And then once they had noted that they had received the payment, they promptly refunded that to her. I believe she had made a payment electronically and it was refunded to her electronically. Take me through that again. The due date was when for the payment? September 5, 2008. Okay. And the sale occurred on the 18th, is that right? That's correct. And when did the payment arrive? I don't have notice when the payment was late. She did say she made it approximately a few days late. So I think we're looking at at least 10 days late. But you're representing to the court that as of September 18th, the payment had not arrived. It's my understanding that it was not. It may take a couple days of processing to get that. But I do know that it was not received into GMAC until at least 10 days late. Until 10 days? 10 days late. So approximately the 15th. So perhaps they received it a day or two before the sale. But I can't confirm whether once they became aware of that. Well, I would find it quite surprising that the bank, with hundreds of mortgages in its inventory, would decide to pick this one where the two prior payments were timely. And it's conceivable, and we need to pin this down from opposing counsel, but it's conceivable that you actually received the payment before you started foreclosure. Under the terms of the ---- Notwithstanding that it was somewhere between 10 and 13 days late. Sure. It was at least 10 days late. What we're operating under is a forbearance agreement, which is part of the record, and that says your payments are due on the 5th. If there's any late payment, we will restart foreclosure without further notice to you. So at this point, we know that Mrs. King had defaulted on the original agreement, and from her affidavit we understand she made a payment late earlier, approximately March of 2008, and then made this late September payment. So this is the third opportunity GMAC Mortgage gave Mrs. King to get current on her payments, make timely payments, and get back to being on schedule. And third time she was late, the foreclosure is restarted and pursuant to the language of that forbearance agreement, any late payment, zero tolerance, zero grace period, we'll restart the foreclosure. Yeah, I'm looking back again at the plaintiff's affidavit, and she doesn't say the date of the September payment. In paragraph 23, it simply says, I paid the 1908 late, and explains the circumstances of that. So it doesn't actually, she doesn't say either when it went out. She doesn't. In one of plaintiff's exhibits following, I believe, her affidavit, she did attach her payment history, perhaps, I think it's a bank statement. It could be. And it does have the exact date on there. I apologize. I don't have that with me. But I understand it to be approximately ten days late. And once the September 5th payment was not made, then the process, foreclosure process starts pursuant to the terms of the forbearance. If I may address her estoppel claim briefly, the $64,000 question in this case is what did she do in reliance on that statement? The monies she paid GMAC mortgage were already due. And equity doesn't allow a plaintiff to say, well, had I known, I wouldn't have paid you the money I already owed you. That's preexisting duty. That's money that she already owes. We look into what did you do in reliance. She didn't sell her California house. She didn't load up everything in a truck and move it over to Vegas in anticipation of residing in this property. And what we heard, it's in the brief, and what we heard from Mrs. King's counsel was that she did not file for bankruptcy. That's not sufficient. There's nothing in the bankruptcy code that allows a debtor to retain a house indefinitely without paying for it. There's provisions in 11 U.S.C. 362 that allow a creditor to lift a stay under certain circumstances. So there's no guarantee that had she filed bankruptcy, she would have kept that house. So that's not really reliance that's going to allow this. Where was she living? She was living in California. She had a house in Corona, I believe. And this house was her grandmother's, became an investment property. Was it occupied at the time? It was to be a tenant October 1st, I think. She had tenants in there on a two-year lease. Due to the economy, they stopped paying and moved out. That caused her initial default. She was in the process of trying to get that re-renovated and rented out, but it was vacant at the time of the foreclosure, and it remains vacant today. The other example we saw in Mrs. King's brief was, well, if I had known you were going to foreclose, I would have filed a lawsuit. That really begs the question, on what grounds would you have based the lawsuit? Your contractual claims and similar causes of action would have also failed as a matter of law, and this Court can't ‑‑ equity doesn't allow you to say, well, had I known you were going to foreclose, I would have just filed a nonmeritorious claim. So we have to look at what claims could she have made in order to prevent the foreclosure, and did GMAC prevent her from doing that? And the answer is no. There's simply no causes of action that she could have alleged. And we didn't see any enumerated either in the record or in Mrs. King's brief. So I see I'm running out of time. If the Court has any other questions. No questions. Thank you, counsel. Thank you, Your Honor. Mr. Harker, you have some reserve time. Thank you, Your Honor. To clarify, the first issue on the record in page 177 is the bank statement, which was attached, I believe it was, to our opposition to motion for summary judgment. This bank statement shows the payment electronically being made on September 14th, 2008, and then that same bank statement shows on September 18th the money being returned from the bank to Mrs. King into that same bank account. So it is in the record. I apologize for not having made that clear. So it was basically sent and rejected because of the foreclosure decision. Well, evidently it was sent on the 14th, the sale occurred on the 18th, and the money was returned the same day as the sale. Counsel said one thing I do disagree with. Nowhere in our records did we say there was one continuance. We don't know if there was any continuances. If I recall, there was never any documentation provided regarding the oral continuances. The sale was set for July, occurred in September. There may have been one, two, three, five, seven, who knows how they continued the sale. My client never got notice. My client never got re-notice. So there's nothing in the record setting forth the fact that there were any oral continuances. And so, therefore, it's my client's position there should have been at least a re-notice or at least some type of communication saying, hey, you've breached, we're selling. You know, the banks always rely on their documentation, which is in their initial paperwork, stack of paperwork when you buy a house, or even when they send you documents saying we always reserve the right to foreclose. But when you accept the payments and then all of a sudden foreclose without any new notice or any, obviously there comes what I would argue the wrongful foreclosure and the estoppel for sure. My client has relied on these representations, has made payments in good faith, admittedly the last one late. But, you know, if they weren't going to accept that payment, there should have been a new notice of foreclosure. And I see my time is up. Thank you, counsel. The case just argued will be submitted for decision.
judges: Schroeder, O'scannlain, Graber